UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOLM BERNARD BENSON,

            Petitioner,           Case No. 21-10818

v.                                      HON. MARK A. GOLDSMITH

RANDEE REWERTS,

            Respondent.
_____/

**OPINION & ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Malcolm Bernard Benson, a Michigan prisoner, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Following a jury trial in Michigan's Wayne Circuit Court, Petitioner was convicted of first-degree murder, Mich. Comp. L. § 750.316; attempted armed robbery Mich. Comp. L. § 750.529; felon in possession of a firearm, Mich. Comp. L. § 750.224f; and possession of a firearm during commission of a felony, Mich. Comp. L. § 750.227. The trial court sentenced Petitioner to a term of life imprisonment without possibility of parole for the murder conviction and lesser terms for his other offenses.

Petitioner raises a single claim in his habeas petition, stating in full:

Denial of effective assistance of counsel. The prosecution failed to disclose evidence favorable to the defendant. (Supplement 7) says: on this date and time I received a tip from a CI [confidential informant] that there was going to be a "money drop" to the suspect in this case. The prosecution do [sic] not say or identify this CI, if suspect received this "money drop" off? How much money? Or what ever happened to this money? Or where is it now? Who sent the money?

Pet. at PageID.5 (Dkt. 1).

The Court denies the petition because the failure-to-disclose claim is without merit and because review of Petitioner's claim of ineffective assistance of counsel is procedurally barred. The Court also denies a certificate of appealability and denies Petitioner leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

The Michigan Court of Appeals summarized the evidence presented at Petitioner's jury trial:

> On September 16, 2015, William King was heading to work. He lived at the Normandie Hotel, and he usually left at about 5:10 a.m. When King left for work that morning, he encountered two individuals, defendant and another man, in front of the Normandie Hotel. King said good morning to them. The other man said good morning back, but King heard defendant say, "I'm hungry." King took defendant's statement to mean defendant was looking for money. King felt threatened by the statement. King kept on walking and did not look back after the exchange.
>
> King subsequently ended up at the bus stop in front a fish market, which was about a block away from the Normandie Hotel. Not long had passed before Stanley Carter arrived at the bus stop. King and Carter exchanged pleasantries. King and Carter saw each other often at the bus stop. About a minute after they began talking, the two men in front of the Normandie Hotel showed up at the bus stop. King sensed something amiss behind him. He then noticed that Carter was backing up into the street in front of King with his hands raised. He heard Carter say, "I don't have no money." King then saw defendant as he moved just past where King was sitting. Defendant told Carter, "don't run." Defendant then shot and killed Carter. After Carter was shot, King took off running. King escaped unscathed. Soon after his successful escape, King reported the shooting to the police, and the police began an investigation that led to defendant.
>
> In the course of their investigation, the police contacted [Nicole] Wilson because they had received information that Wilson was a witness to Carter's shooting. As it turns out, that was not Wilson's only experience with defendant in the 24 hours preceding Carter's shooting. Sometime before Carter's shooting, Wilson and defendant had engaged in an agreed upon paid sexual arrangement. After they parted ways, Wilson went to hang out near the Normandie Hotel. At about 5:00 a.m. on September 16, 2015, she saw defendant walk towards the bus stop in front of the fish market and subsequently shoot someone. At defendant's preliminary examination, Wilson indicated that she and defendant completed their sexual arrangement about 15 minutes before she observed defendant shoot the individual

> at the bus stop.  At trial, Wilson indicated that she and defendant completed their sexual arrangement several hours before she observed defendant shoot the individual at the bus stop.
>
> Police interviewed both King and Wilson.  Both identified defendant as the shooter.  The police also managed to compile a video of defendant's movements that morning from surveillance cameras near the scene of the crime.  The video showed defendant walking from the Normandie Hotel to the bus stop near the fish market, and then back to the Normandie Hotel.  Defendant was subsequently arrested, charged, and convicted.

People v. Benson, No. 333454, 2017 WL 6502674, at *1–*2 (Mich. Ct. App. Dec. 19, 2017).

Further facts developed at trial are discussed below.  Following his conviction, Petitioner filed a claim of appeal.  His appointed appellate counsel filed a brief on appeal that raised one claim:

> I. Trial counsel rendered constitutionally ineffective assistance of counsel by failing to cross-examine Nicole Wilson regarding her inconsistent testimony at the preliminary examination.

The Michigan Court of Appeals rejected the claim on the merits and affirmed Petitioner's conviction.  Id. at *2–*4.  Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim.  The Michigan Supreme Court denied the application by standard form order.  People v. Benson, 911 N.W.2d 708 (Mich. 2018).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised four claims:

> I. The State of Michigan under the United States Constitution's Due Process Clause did not have jurisdiction to convict the Defendant of a crime of felony-murder in which Michigan did not have a common law nor statutory law felony-murder doctrine.
>
> II. Defendant's right to due process of law was violated when the jury's verdict was against the great weight of the evidence, and there was clearly insufficient evidence to support a verdict of guilty in this case.
>
> III. Defendant was denied his right to due process and a fair trial pursuant to the Fourteenth Amendment of the United States Constitution and under Article 1, § 17

3

> of the Michigan Constitution of 1963 when the prosecution engaged in flagrant, prejudicial and pervasive conduct when she: overcharged the defendant with the crime of CSC [criminal sexual conduct] and made a very prejudicial statement during closing which suggested to the jury that the Defendant had killed before.
>
> IV. Defendant-Appellant's trial and appellate attorneys were ineffective in their representation, trial counsel failed to adequately investigate and prepare the Defendant's case for trial and appellate counsel failed to file a significant issue of ineffective assistance of trial counsel, by filing first a motion back in the trial court for a Ginther hearing so that a testimonial record could be made on facts which are not part of the record.

Significantly, none of these claims asserted the factual basis for Petitioner's failure-to-disclose claim raised in his federal habeas petition. The first claim was a frivolous attack on the enforceability of Michigan's murder statute. Petitioner's second claim attacked the sufficiency of the evidence presented at trial. The third claim raised a similar legal basis as his failure-to-disclose claim by asserting prosecutorial misconduct, but it asserted an entirely distinct factual basis. Petitioner argued that the first-degree criminal sexual conduct charge was made in a bad-faith effort to prejudice the jury against Petitioner and that the prosecutor's closing argument went beyond the evidence presented at trial. The fourth claim asserted ineffective assistance of counsel for lack of pretrial preparation, but it did not mention anything about a withheld statement from a confidential informant.

The trial court denied the motion. It found that the claims were barred from review under Michigan Court Rule 6.508(D)(3) because "all of defendant's claims could have been raised on appeal." 10/23/19 Order at PageID.794 (Dkt. 9-13). The court also rejected each of the four claims on the merits. Id. at PageID.794–795.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals denied the application because "defendant has failed to establish that the trial court erred in denying the motion for relief from

judgment." Mich. Ct. App. 352963 at PageID.997 (Dkt. 9-16). Petitioner appealed again to the Michigan Supreme Court, but the Michigan Supreme Court denied his application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D)." Mich. Supreme Ct. 161450 at PageID.902 (Dkt. 9-15).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the state courts adjudicated the claims on the merits. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15–16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–406 (2000)). An "unreasonable application" occurs when "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his or her claim "was so lacking in

5

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### III. DISCUSSION

**A. Habeas Petition**

Petitioner raises one claim in his habeas petition, but exactly what that claim consists of is open to interpretation. Petitioner labels his claim "denial of effective assistance of counsel," and he indicates that he presented the claim to the state courts in his motion for relief from judgment. Pet. at PageID.5–6. The body of the claim, however, asserts that the prosecutor failed to disclose evidence regarding a confidential informant who told police something about a "money drop" intended for Petitioner. Id. at PageID.5.

Respondent notes the problem in the answer to the petition, asserting that if Petitioner attempts to raise a claim about a confidential informant and a money drop, the claim is unexhausted. Resp. to Pet. at PageID.93 (Dkt. 8). Respondent goes on to presume that Petitioner more likely intended to raise the ineffective assistance of counsel claim that he raised in his motion for relief from judgment, and the answer responds to that claim, asserting that it is procedurally defaulted. Id. at PageID.94–99.

Petitioner filed a reply brief that did not clarify matters (Dkt. 10). Instead, exhibiting further confusion, Petitioner asserts that any procedural default of his claim is excused by the state's interference with his ability to file a timely application for leave to appeal in the Michigan Supreme Court. Id. at PageID.1220. The reply is unresponsive to the facts and the issues raised in the case because the Michigan Supreme Court did not reject Petitioner's application for leave to appeal as untimely. Instead, the alleged default is Petitioner's failure to raise his failure-to-disclose claim on direct review.

6

Given the uncertainty surrounding what claim Petitioner intended to raise in his petition, the Court will err on the side of caution and address both potential claims: the failure-to-disclose claim and the ineffective assistance of counsel claim.

1. **Brady Claim**

Petitioner's claim that the prosecutor failed to disclose a statement from a confidential informant regarding a "money drop" intended for Petitioner was never asserted in any form in the Michigan courts. Despite non-exhaustion, the Court may address and reject the claim on the merits. See 28 U.S.C. § 2254(b)(2).

The Due Process Clause requires the state to disclose to the defense favorable evidence that is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1967). "[E]vidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469–470 (2009). A reasonable probability in this context means "that the likelihood of a different result is great enough to undermine[] confidence in the outcome of the trial." Smith v. Cain, 565 U.S. 73, 75–76 (2012) (punctuation modified). There are three elements to a Brady violation, (i) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (ii) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (iii) "prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–282 (1999).

Petitioner fails to demonstrate any of the elements of a Brady violation. First, Petitioner has not indicated how the information from the confidential informant was favorable to the defense, either as exculpatory evidence or as impeachment evidence. Petitioner makes a cryptic citation to what is perhaps a page from a police report—"Supplement 7"—but he fails to proffer a

7

copy of the report. Pet. at PageID.5. According to Petitioner, the report indicates that a confidential informant reported to police that "there was going to be a 'money drop' to the suspect in this case." Id. The allegation is too vague to support a finding that the evidence was favorable to the defense. There is nothing inherently favorable to the defense about a tip from a confidential informant or that a suspect in a case was meant to receive a "money drop."

Nowhere in the trial record is there any indication that some sort of "money drop" was part of the factual backdrop of the case. The prosecutor's theory of the case was that the victim was shot during the attempted commission of a robbery. Shortly before the shooting, Petitioner told one eyewitness that he was "hungry," which the witness understood to mean that Petitioner was looking for money. Petitioner does not explain how additional information that Petitioner was supposed to receive a "money drop" would have been favorable to the defense. Rather, if anything, it would seem the opposite is true: any information connecting Petitioner to the scene and time of the crime while looking for money would have benefitted the prosecution more than the defense.

Petitioner likewise provides no basis for the Court to conclude that the information was withheld from the defense. It appears the information was gleaned from a police report. The trial record suggests that defense counsel was in possession of the police reports. Defense counsel used the police reports during cross-examination at the preliminary examination. 10/9/15 Prelim. Examination Hr'g Tr. at PageID.156 (Dkt. 9-2). Defense counsel later resolved a discovery dispute at a pretrial hearing and obtained the investigative subpoenas for the case. 12/11/15 Final Conference Hr'g Tr. at PageID.210–211 (Dkt. 9-4). The record also indicates that defense counsel gave Petitioner copies of the discovery materials that defense counsel had. 2/2/16 Mot. Hr'g Tr. at PageID.224 (Dkt. 9-5). Substitute defense counsel acknowledged prior to trial that he too had received the discovery materials. 3/8/16 Pretrial Hr'g Tr. at PageID.238 (Dkt. 9-6). Finally, the

trial record indicates that defense counsel had received and reviewed the police records, as he used them in the cross-examination of witnesses.  4/5/16 Jury Trial Tr. at PageID.449–450, 579 (Dkt. 9-8).  While the Court recognizes the difficulty in proving the negative, it notes that Petitioner presents no evidence to suggest that the police report in question was not turned over to defense counsel.

Moreover, Petitioner cannot show prejudice—that there is a reasonable probability of a different result at trial had he been provided the confidential informant's alleged statement. As noted by the trial court when it denied Petitioner's motion for relief from judgment, the evidence offered against Petitioner at trial overwhelmingly indicated his guilt.  10/23/19 Order at PageID.796.

William King testified that he was friends with Stanley Carter, the murder victim.  On his way to the bus stop, King passed Petitioner on the street.  Petitioner told King that he was "hungry," which King understood to mean that Petitioner was looking for money.  Petitioner was wearing a bright-colored shirt.  King arrived at the bus stop and waited with Carter.  King then saw Petitioner approach Carter with a gun in hand.  Petitioner told Carter not to run.  Carter backed up with his hands in the air, and Petitioner shot him in the side of the chest.

Nicole Wilson witnessed the shooting from about two blocks away. She knew it was Petitioner who committed the shooting because she had just engaged in a sex act with Petitioner before he walked towards the bus stop.  Both King and Wilson also immediately positively identified Petitioner at a photographic lineup.

Tanya McKay testified that she was in the area on the morning of the shooting.  She saw Petitioner "turning a trick" outside with Wilson in the dark that morning, and she saw Petitioner fire a handgun into the air when people stopped to watch.  Sometime after the shooting, Petitioner

9

returned to the area and asked McKay to give him a ride so that he could change out of his bright-colored shirt.

Corroborating the eyewitness accounts was a video compiled from several nearby security cameras. One clip showed Petitioner walking in the direction of the bus stop immediately before the shooting. The clip, captured by a liquor store's camera, included a clear shot of Petitioner standing with another man in a well-lit area. Another partially obscured clip taken from a camera located inside a market showed a man—likely the victim—standing outside and then running away. Another person wearing a bright shirt then walked by, leaned over to look at something on the ground, and walked away. The next clip taken from a camera outside the market showed a person consistent with Petitioner's appearance walking towards the other man, the other man falling, and the first man leaning over him and walking away. The next portion of the video showed that Petitioner—seen walking directly towards the camera—was the person who had interacted with the man seen falling. The image was clear enough that defense counsel felt compelled to concede in closing argument that the video at least showed Petitioner walking by the other man.[1] 4/6/16 Jury Trial Tr. at PageID.690–691 (Dkt. 9-9).

Accordingly, even if the police report allegedly containing the information from a confidential informant exists and was not provided to the defense, there is no reasonable probability that it would have led to a more favorable trial result. Nothing about the informant's statement that there was supposed to be a "money drop" for Petitioner undermines any of the evidence presented against Petitioner at trial. Petitioner's unexhausted Brady claim is therefore without merit.

---

[1] Defense counsel suggested that there might have been some unseen and unidentified third man not pictured in the videos that shot the victim and that Petitioner happened to be walking by at the wrong moment. Id.

## 2. Ineffective Assistance of Counsel Claim

The Court next addresses the alternative that Petitioner raises the ineffective assistance of counsel claim that he presented in his motion for relief from judgment. The motion contained the following allegations:

1. Trial counsel failed to file a pretrial motion to exclude evidence of Petitioner's prior convictions, which came out when a witness testified unsolicited on defense counsel's cross-examination that Petitioner was on parole.

2. Trial counsel failed to prepare for trial by investigating Petitioner's statement to trial counsel about Petitioner's activities on the day of crime. Petitioner claims that bus station video and casino video would have shown his whereabouts prior to the shooting and that he had won $213 at the casino earlier that night. The evidence, Petitioner alleges, would also have shown that he arrived in the area of the shooting around 3:45 a.m., later than the trial witnesses' estimate, but still prior to the shooting.

3. Trial counsel failed to review the full video compiled by the police at a pretrial hearing. Had he done so, counsel would have hired a defense expert to testify that the video itself did not show anyone holding a weapon or firing a weapon.

4. Trial counsel failed to file a pretrial motion challenging the criminal sexual conduct charge, though the record shows that a motion to quash the charge was denied. 12/11/15 Final Conference Hr'g Tr. at PageID.211–216.

5. Trial counsel failed to object at trial to the prosecutor arguing that Wilson testified that she felt she might be killed when she performed the sex act on Petitioner.

Mot. for Relief from J. at PageID.777–789 (Dkt. 9-12).

Respondent asserts that the claim is barred from federal habeas review because the trial court found that Petitioner had not demonstrated good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise the claims on direct appeal.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." Trest v. Cain, 522 U.S. 87, 89 (1997). Pursuant to the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a

11

state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). "[W]here a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." Sheffield v. Burt, 731 F. App'x 438, 441 (6th Cir. 2018).

For a claim to be defaulted, the habeas petitioner must have failed to comply with a state procedural rule, the rule must have actually been relied upon by the state courts, and the procedural rule must be "an independent and adequate state ground to foreclose review of the federal constitutional claim." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2005). "To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look to the last reasoned state court decision disposing of the claim." Henderson v. Palmer, 730 F.3d 554, 560 (6th Cir. 2013) (punctuation modified, citation omitted).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless a petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or if a petitioner can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner fails to show cause for the procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). A petitioner may also overcome a procedural bar by proving actual innocence. Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3), the rule at issue here, provides that—absent a showing of good cause for the defendant's failure to previously raise the new claims and actual prejudice—a court may not grant post-conviction relief to a defendant if the defendant's motion for relief from judgment alleges grounds that could have been raised on direct appeal. When a Michigan Court relies on this procedural rule as a ground for denying post-conviction relief, it bases its decision

12

on a state procedural ground independent of federal law and adequate to bar subsequent federal habeas review. See Jackson v. Lafler, 453 F. App'x 620, 623 n.1 (6th Cir. 2011); Ivory v. Jackson, 509 F.3d 284, 292–293 (6th Cir. 2007); Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005). The state trial court here invoked this rule by finding that Petitioner raised his ineffective assistance of counsel claim for the first time in his motion for relief from judgment, but, because he could have raised the claim on direct appeal, review was barred. 10/23/19 Order at PageID.794

Review of Petitioner's post-conviction ineffective assistance of counsel claim is, therefore, barred unless (i) Petitioner can show cause for noncompliance with the procedural rule and actual prejudice resulting from the alleged constitutional violation, or (ii) he establishes actual innocence. Coleman, 501 U.S. at 750–751; Nields v. Bradshaw, 482 F.3d 442, 450 (6th Cir. 2007).

Petitioner asserted in state court that the ineffectiveness of his appellate counsel constituted cause to excuse his procedural default. Mot. for Relief from J. at PageID.777. To establish ineffective assistance of counsel, a habeas petitioner must show that his or her counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. at 668, 687 (1984). With respect to whether an appellate attorney performs deficiently by failing to raise an issue on direct appeal, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue. Jones v. Barnes, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail." Smith, 477 U.S. at 536. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (punctuation modified). For instance, appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue that was obvious from the trial record and would have resulted in reversal on appeal. Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that, by omitting the ineffective assistance of trial counsel claim raised in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. On direct appeal, appellate counsel raised a different claim concerning the effectiveness of Petitioner's trial counsel. Appellate counsel claimed that trial counsel was ineffective for failing to impeach Wilson regarding inconsistencies between her trial and preliminary examination testimony. Wilson was a key witness. She was the complainant for the criminal sexual conduct charge. She testified that Petitioner shot a handgun into the air during their sexual encounter, and she testified that, from a few blocks away, she saw Petitioner shoot the murder victim. As noted by the Michigan Court of Appeals, trial counsel did not cross-examine Wilson about a substantial discrepancy in her testimony regarding the amount of time that elapsed between the sex act and the murder. The court nevertheless rejected the claim in light of counsel's other attacks on Wilson's credibility and the strong evidence of Petitioner's guilt.

14

The omitted allegations of ineffective assistance of counsel are no stronger. They too ignore defense counsel's other attempts to undermine the prosecutor's case, and they too would not have overcome the problem posed by the strong evidence of Petitioner's guilt. For any allegations of ineffectiveness, Petitioner was required to show Strickland prejudice—that there was a reasonable likelihood of a more favorable trial outcome. But two eyewitnesses identified Petitioner as the shooter, and their testimony was corroborated by the video that showed Petitioner at the exact time and scene of the shooting. While it appears the video did not clearly show the shooting itself, when the video is taken together with the witnesses' testimony, Petitioner cannot show that, if his trial attorney had performed the actions he complains of, that there is a reasonable likelihood that Petitioner would not have been convicted. The omitted allegations of ineffectiveness are not stronger than the allegations presented on direct appeal, nor are they "dead-bang winners." Petitioner, therefore, fails to demonstrate cause for his claim of ineffective assistance of appellate counsel.

In addition, Petitioner does not demonstrate that the failure to consider his claims would result in a fundamental miscarriage of justice. The exception under which a federal court may review a petitioner's procedurally defaulted claims if the failure to do so would result in a fundamental miscarriage of justice requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. Murray, 477 U.S. at 495–496. Actual innocence means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To be credible, a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup, 513 U.S. at 324. Petitioner makes no such showing. Therefore, Petitioner's ineffective assistance of counsel claim is barred by Petitioner's procedural default.

15

Petitioner fails to demonstrate entitlement to habeas relief for either his unexhausted Brady claim or the ineffective assistance of counsel claim presented to the state courts in his motion for relief from judgment. Accordingly, the Court denies the petition for a writ of habeas corpus.

### B. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (punctuation modified). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. Therefore, the Court denies a certificate of appealability.

### C. Leave to Proceed In Forma Pauperis on Appeal

A court may grant an application for leave to proceed in forma pauperis on appeal if it finds that an appeal can be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(2). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster v. Ludwick, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002). The Court finds that an appeal could not be taken in good faith. Therefore, it denies Petitioner leave to proceed in forma pauperis on appeal.

### IV. CONCLUSION

For the reasons set forth above, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and denies Petitioner

leave to proceed <u>in forma pauperis</u> on appeal.

SO ORDERED.

Dated: April 11, 2022  s/Mark A. Goldsmith
     Detroit, Michigan  MARK A. GOLDSMITH
                                                                             United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2022.

                                                                s/Karri Sandusky
                                                                KARRI SANDUSKY
                                                                Case Manager